**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ISMAEL IRIZARRY,** | ) | **CASE NO. 1:12CV0845** |
| | ) | |
| **Petitioner,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **DONALD MORGAN, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Ismael Irizarry ("Irizarry"), challenges the constitutionality of his conviction in the case of *State v. Irizarry*, Cuyahoga County Court of Common Pleas Case No. CR-09-519881-A.[1]  Irizarry, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on March 25, 2012.  On August 10, 2012, Warden Donald Morgan ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 8.)  Irizarry did not file a Traverse.  For reasons set forth in detail below, it is recommended that Irizarry's petition be denied.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Irizarry's conviction as follows:

{¶ 2} Two 16–year–olds were involved in a home burglary where one left

---

[1]Irizarry was also charged with burglary, tampering with evidence, and obstruction of official business ("burglary case") in Cuyahoga County Common Pleas Court, Case No. CR-509516.  *State v. Irizarry*, 2010 WL 4132266,*2, 2010-Ohio-5117(Ohio App. 8th Dist., Oct. 21, 2010).

fingerprints behind. Police arrested and interrogated Gabriel Feliciano ("Gordo") after matching his fingerprints to those found at the home. Gordo indicated that appellant also participated in the burglary. On September 5, 2007, as part of pretrial discovery, the state played an audiotape of Gordo's confession to appellant's attorney, in which he implicated appellant. Gordo, who had been close friends with appellant, began to avoid his calls and instructed his family to tell appellant he was not home if appellant stopped by.

{¶ 3} On Sunday, September 23, 2007, Gordo was seen walking down the street with appellant. That was the last time anyone recalled seeing Gordo alive.

{¶ 4} After Gordo had been missing for some time, his family organized a rally to energize community support to search for him. At the rally, Jesus Rios, who lived next door to Anderson Diaz Fontanes, a friend of appellant's, approached Gordo's sisters and informed them that he knew where Gordo's body was. Rios talked to the police, who were led to an area of Brookside Park near where I–71 crosses the railroad tracks. The police discovered Gordo's body approximately 62 feet inside a drainage culvert next to the railroad tracks. Gordo had been shot twice—once in the back and once in the head.

{¶ 5} Forensic entomologist, Dr. Joseph Keiper, placed the time of death between September 22, 2007 and September 25, 2007 based on the growth rate of blue bottle fly larva collected from the body. Dr. Keiper testified that the body was moved into the culvert within a few hours of death based on the lack of other species of insects found on the body.

{¶ 6} Rios also testified that he had seen appellant at Fontanes's house, that appellant was wearing bloody clothes, and that appellant stated that he had killed someone. According to Rios, appellant placed the clothes in a bag behind Fontanes's house and returned the next day to burn the clothes. Rios testified that the siding of the garage melted where appellant had burned the clothes. The state introduced photographs of the melted siding.

{¶ 7} Appellant was arrested on October 3, 2007 and taken to the second district station of the Cleveland police department for questioning. Appellant told Det. Virgil Williams that he had witnessed Gordo's abduction from a party on Saturday, September 22, 2007 by individuals named House and Kevin, and that a few days later House had made appellant move the body into a tunnel. Homicide detectives moved appellant from the second district police station to the downtown homicide division for further questioning. Detectives Joselito Sandoval, Beverly Fraticelli, and Timothy Entenok began to interview appellant for a few minutes, but he then invoked his right to counsel. The interview terminated, and the officers left the room.

{¶ 8} Edgardo Alvarez, appellant's stepfather, approached Det. Fraticelli and spoke with her about appellant. She informed him of appellant's request to speak to counsel. Alvarez asked to speak with appellant and told appellant to make a statement to the police so they could get out of there, and if he did not, he would sign him over to the custody of the police. Appellant then asked to speak with detectives where he signed a waiver of his Miranda rights. Appellant then gave a videotaped statement.

*Irizarry*, 2010-Ohio-5117, *1-2.

## II.  Procedural History

### A.        Conviction

In January, 2008, a Cuyahoga County Grand Jury charged Irizarry with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) and one count of retaliation in violation of O.R.C. § 2921.05(B).  Each count carried two firearm specifications (O.R.C. §§ 2941.141 and 2941.145).  (Doc. No. 8, Exh. 1.)

Prior to trial, Irizarry filed a motion to suppress his statements to the police, *Id*. at Exh 3, as well as a motion in *limine* to prohibit the admission of hearsay from various witnesses.  *Id*. at Exh. 5.  After a hearing, the trial court denied both motions.  *Id*. at Exh. 7 & Trial Vol. I pp 47-226, 253-264.

A jury found Irizarry guilty of aggravated murder.  On April 21, 2009, he was sentenced to an aggregate prison term of life with parole eligibility after 30 years.  *Id*. at Exh. 17-18.

### B.        Direct Appeal

On May 22, 2009, Irizarry, through counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising six assignments of error:

1.        The trial court erred in denying Appellant's motion for acquittal when the state failed to present sufficient evidence to sustain a conviction.

2.        Appellant's conviction is against the manifest weight of the evidence.

3.        Appellant was denied a fair trial due to prosecutorial misconduct by the assistant prosecutor commenting on Appellant's failure to testify.

4.        The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Appellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

5.        The trial court erred by denying the motion to suppress statements after Appellant invoked his right to counsel but the police continued interrogating him.

6.        The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination, and Ohio Evidence Rules 801 and 802, when it permitted state witnesses to

3

testify with inadmissible hearsay statements.

*Id*. at Exh. 21.  The appellate court *sua sponte* consolidated Irizarry's appeal in this case with the appeal in the burglary case.  *Id*. at Exh. 20.  The appellate court affirmed Irizarry's conviction in the murder case.[2]  *Id*. at Exh. 25 at 6-7.

On December 6, 2010, Irizarry, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio, raising four propositions of law:

1.    A defendant is denied his constitutional right to have his guilt proven beyond a reasonable doubt and his right to a fair trial when the jury verdicts are unsupported by sufficient evidence.

2.    The appellant was denied a fair trial due to prosecutorial misconduct by the assistant prosecutor commenting on the appellant's failure to testify.

3.    The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59 and Evid.R. 404(B) and the appellant's rights under Article I, Section 10 of the Ohio constitution and the Fourteenth Amendment to the United States constitution.

4.    The trial court erred by denying the motion to suppress statements after the appellant invoked his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

*Id.* at Exh. 27.  On February 16, 2011, the appeal was dismissed as not involving any substantial constitutional question.  *Id*. at Exh. 28.

### C.    Federal Habeas Petition

On March 25, 2009, Irizarry filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

**GROUND ONE**:  The trial court erred by denying the motion to suppress statements after plaintiff invoked his right to counsel but the police continued interrogating him.

**Supporting Facts**: Plaintiff invoked his right to counsel.  The police ignored it. Juvenile appellant asked for a lawyer on several occasions.  There is evidence of police pressure along with that of his step-father.

**GROUND TWO**: The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination,

---

[2]The state appellate court reversed his conviction in the burglary case, remanding for a new trial on two counts.  *Id*. at Exh. 25 at 10-11.  Ultimately, both counts in the burglary case were dismissed with prejudice.  *Id*. at Exh. 27.

4

and Ohio Evidence Rules 801 and 802 when it permitted State witnesses to testify with inadmissible hearsay statements.

**Supporting Facts**: Plaintiff argues that in the State's case in chief, the court allowed the State's witnesses to testify to matters which amounted to hearsay. Over objection, the prosecutor through Detective Balak was permitted to play the audiotaped statement of Gabriel Feliciano.  Also Gabriel's attorney from juvenile court was permitted to testify what Gabriel told him.  In the burglary case to the court, Detective Balak testified that he physically arrested Gabriel, advised him of his rights, and took a verbal statement, which was recorded from him.  Through the interview with Gabriel, Detective Balak learned that there is another suspect, Appellant.  The prosecutor attempted to introduce into evidence the tape of deceased.  Defense counsel objected, but the court allowed admission of the tape. This is blatant hearsay.  The admission of this evidence violated his right to confrontation under both the Ohio Constitution and U.S. Constitution and violated well established hearsay rules of evidence.

(Doc. No. 1.)

### III.  Exhaustion and Procedural Default

#### A.        Exhaustion Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

#### B.        Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his

claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6ᵗʰ Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6ᵗʰ Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6ᵗʰ Cir. 1984). A

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

###### C.        Application - Ground Two

In ground two, Irizarry contends that his constitutional rights were violated when the trial court "permitted state witnesses to testify with inadmissible hearsay statements."  (Doc. No. 1 at 5.)  Irizarry raised this argument as the sixth assignment of error to the state appellate court, but failed to raise it with the Ohio Supreme Court.  (Doc. No. 8, Exhs. 21 & 27.)  Since this claim was not presented in a full round of state appeals, Irizarry is prohibited from raising it now. Ground two is procedurally defaulted.  *See Engle*, 456 U.S. at 125 n. 28; *see also Coleman*, 501 U.S. at 731-32.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (*citing Wainwright*, 433 U.S. at 87.)  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Irizarry failed to file a Traverse.  He has not presented to the Court cause for his default nor alleged actual prejudice.  Furthermore, Irizarry has made no claim of actual innocence or offered any new, reliable evidence.  Ground two is procedurally defaulted.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ⸺ U.S. ⸺, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the

9

state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### V.  Analysis

In ground one, Irizarry alleges that "[t]he trial court erred by denying the motion to suppress statements after plaintiff invoked his right to counsel but the police continued interrogating him."  (Doc. No. 1, p. 5.)

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V, cl. 2.  Both before and after holding that the Fifth Amendment privilege against self-incrimination applies to state action, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), and in the context of custodial interrogations, *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), the United States Supreme Court applied the Due Process Clause of the Fourteenth Amendment to prohibit states from securing criminal convictions through the use of involuntary confessions resulting from coercive police conduct.  *See, e.g., Miller v. Fenton*, 474 U.S. 104, 109 (1985); *Brown v. Mississippi*, 297 U.S. 278 (1936).  "The sole concern of the Fifth Amendment [privilege], on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).  "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.  *See Moran v. Burbine*, 475 U.S. at 421, 106 S.Ct. at 1141."

10

*Connelly*, 479 U.S. at 170 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception.... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements."); *Fare v. Michael C.*, 442 U.S. 707, 726–727, 99 S.Ct. 2560, 2572–2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in *Miranda*.")

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the United States Supreme Court held that, once a suspect has invoked his right to counsel, all interrogation must cease. *McKinney v. Ludwick*, 649 F.3d 484, 490-491 (6th Cir. 2011) (*citing Edwards* 451 U.S. at 484-485.) *Edwards* also provides, however, that interrogation may resume if "the accused himself initiates further communication, exchanges, or conversations with the police." *Ludwick* at 485. The Supreme Court recently explained that, "[t]he *Edwards* presumption of involuntariness ensures that police will not take advantage of the mounting coercive pressures of prolonged police custody by repeatedly attempting to question a suspect who previously requested counsel until the suspect is badgered into submission." *Ludwick* at 485 (*quoting Maryland v. Shatzer*, ⸺ U.S. ⸺, 130 S.Ct. 1213, 1220, 175 L.Ed.2d 1045 (2010)) (citations and internal quotation marks omitted).

The United States Supreme Court, however, has not addressed the issue of third-party communications. *See Henness v. Bagley*, 2007 WL 3284930, *24 (S.D. Ohio Oct. 31, 2007); *Van Hook v. Anderson*, 488 F.3d 411, 417 (6th Cir. 2007) ("The propriety of communication through a third party was not before the Court in *Edwards*, nor has the Court taken up the issue since that decision. 'Constitutional rights are not defined by inferences from opinions which did not address the question at issue.' *Texas v. Cobb*, 532 U.S. 162, 169, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001).)"

Nonetheless, the Sixth Circuit recently addressed the general rule of *Edwards* and how it applies to third-party communications during interrogations. *See Henness v. Bagley*, 644 F.3d 308, 320 (6th Cir. 2011) *cert. denied* 132 S.Ct. 1970 (2012) (*citing Van Hook*, 488 F.3d at 411.)

11

The *Henness* Court considered whether communication to a third party constitutes initiation of discussions with police as follows:

> An *Edwards* reinitiation occurs when, without influence by the authorities, the suspect shows a willingness and a desire to talk about his case.  *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994).  In *Van Hook v. Anderson*, 488 F.3d 411 (6th Cir. 2007)  (*en banc*), we examined how *Edwards* applies to third-party communications.  We determined that a suspect's willingness to speak to the authorities is not restricted to direct communication only, and a suspect can "communicate a willingness and a desire to talk with police through a third person."  *Id.*  at  418; *see also Owens v. Bowersox*, 290 F.3d 960, 962 (8th Cir. 2002) (It was not "unreasonable for the state court to hold that a defendant may evince a willingness and desire to discuss the crime by communicating with the police through a third party, especially a close relative."); *United States v. Michaud*, 268 F.3d 728, 737–38 (9th Cir. 2001) (holding that officers had the right to inquire whether a suspect was reinitiating communication when her cell-mate told a deputy she wanted to talk); *United States v. Gonzalez*, 183 F.3d 1315, 1323–24 (11th Cir. 1999) (holding that the suspect initiated discussions with police through his wife).
>
> Henness's statement to Thomas reflected a willingness to further discuss the case with the police.  As a result, the officers did not violate Henness's Fifth Amendment rights by interviewing him a second time.[FN2 omitted]

*Henness*, 644 F.3d at 320.  The *Henness* Court concluded that the defendant's conversation with a third-party is neither contrary to nor an unreasonable application of federal law as decided by the Supreme Court.  *Henness*, 644 F.3d at 320.

Here, the state appellate court applied federal precedent and denied Irizarry's claim as follows:

> {¶ 53} Appellant argues in his fifth assignment of error that "[t]he trial court erred by denying the motion to suppress statements after Appellant invoked his right to counsel but the police continued interrogating him."
>
> {¶ 54} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard." (Internal citations omitted.) *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172.
>
> {¶ 55} Appellant argues that he was not properly advised of his *Miranda* rights, and therefore his statements made to the police should have been suppressed. "In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court held that the prosecution has the burden of proving the following facts in order for a statement made by an accused at the time of custodial interrogation to be admitted in evidence: (1) the accused, prior to any interrogation, was given the *Miranda* warnings; (2) at the receipt of the warnings, or thereafter, the accused made 'an express statement' that he desired to waive his *Miranda* constitutional rights; (3) the accused effected a voluntary, knowing, and intelligent waiver of those rights." *State v.*

*Edwards* (1976), 49 Ohio St.2d 31, 38, 358 N.E.2d 1051.

{¶ 56} In the present case, appellant was first advised of his rights in both English and Spanish when he was taken into custody at his high school. Det. Williams read appellant his rights a second time before he began questioning him. Appellant's mother and stepfather signed a statement acknowledging that appellant was read his rights. After being transferred to the homicide unit at the Justice Center, appellant was advised to read his rights, which were posted on the wall of the interrogation room in large font. Appellant executed a waiver of those rights. After approximately ten minutes, appellant said he wished to speak with an attorney and questioning ceased.

{¶ 57} Det. Fraticelli informed appellant's stepfather that appellant had terminated the interview. Appellant then spoke with his stepfather, Alvarez. This conversation allegedly consisted of Alvarez threatening appellant to make a statement, any statement, or he would sign appellant over to the custody of the police. Appellant then asked to speak to detectives and gave them a statement after executing a third *Miranda* waiver.

{¶ 57} In *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, the Supreme Court held "[w]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to police-initiated interrogation after being again advised of his rights. An accused, such as petitioner, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation until counsel has been made available to him, unless the accused has himself initiated further communication, exchanges, or conversations with the police." (Emphasis added.) *Id.* at the syllabus.

{¶ 59} Here, appellant initiated contact with the police following the invocation of his right to counsel. The intervention of Alvarez cannot be attributed to the police because his conversation with appellant occurred without police urging or instigation. Therefore, the trial court did not err in denying appellant's motion to suppress. Appellant was advised of his rights at least four times, evidenced by three signed documents and the testimony of various police officers. Appellant's fifth assignment of error is overruled.

*Irizarry*, 2010-Ohio-5117, *8-9.

The record reflects that Irizarry was advised of his rights at least four times. The first time, he was arrested at his high school, where an officer read him his rights in English and Spanish. (Doc. No. 8-1 at 450, 480.) Irizarry was transported to the Second District police station, where, after his parents arrived, Detective Williams "Mirandized" him from a sheet kept in his desk. *Id.* at 478-480; 482; 499. Det. Williams also testified that Irizarry's parents signed a form indicating that their son had been advised of his constitutional rights.[4] *Id.* at 482-483. Once the homicide

---

[4]Although the parents testified they did not remember signing the form, they acknowledged their signatures were genuine. *Id.* at 405-406, 428.

13

unit arrived, Det. Williams stopped questioning Irizarry.  *Id*. at 486.  He was transported to the homicide unit, along with his parents in a separate car.  *Id*. at 377, 437.  Irizarry was placed in an interview room with Det. Fraticelli, Det. Entenok and Det. Sandoval.  *Id*. at 377.  The session was videotaped.  *Id*. at 377, 437.  Irizarry was instructed to read the *Miranda* rights which were posted on the wall.  *Id*. at 438.  Irizarry acknowledged that he was also given a statement of rights to read and he was asked to sign.  *Id*. at 439.  He read several of the statements and then executed a waiver, circling "yes."  *Id*. at 378.  Almost immediately, Irizarry crossed out the "yes" and circled the "no," informing the detectives that he did not want to make a statement.  *Id*. at 378, 463.  The detectives stopped the interview.  *Id.* at 378, 464.

Irizarry's stepfather, after learning that he had ended the interview, spoke to Irizarry, telling him to "say anything, anything that could help the officers."  *Id*. at 422-424.  Irizarry then agreed to speak to the police.  *Id*. at 440.  Questioning did not begin again until after Irizarry executed a third waiver.  *Id*. at 396.

Irizarry contends that he was pressured by police.  The record, however, does not reflect any such pressure.  In fact, the suppression hearing transcript reflects that when arrested at his high school, Irizarry was told that the police would not talk to him about the reason for the arrest without his parents being present.  (Tr. 480.)  Det. Williams testified that he asked the defendant questions about school and the defendant's style of dress, only after the defendant became anxious while being held in juvenile detention waiting for his parents to arrive.  (Tr. 433, 482.)  Furthermore, the homicide detectives immediately ceased questioning when Irizarry said he no longer wanted to make a statement.  (Tr. 378, 439.)  Except for a conclusory statement that he was coerced by police, Irizarry has provided no contrary evidence.

Irizarry also contends that he was pressured by his stepfather.  Courts have found, however, that there is no constitutional protection against family members who convince them to talk to police.  *Van Hook,* 488 F. 3d at 421; *Arizona v. Mauro*, 481 U.S. 520, 528, 107 S.Ct. 1931 (1987) ("We doubt that a suspect, told by officers that his wife will be allowed to speak to him, would feel that he was being coerced to incriminate himself in any way."); *Snethen v. Nix*, 885 F.2d 456, 457–60 (8th Cir. 1989) (finding no interrogation when a suspect's mother gained

14

access to him by telling officers "if [my son] did this, he will tell me," and exhorted her son to confess so her other son would not be unjustly punished).  The Constitution clearly forbids officials from using their "power of the sword" to coerce a suspect into making self-incriminating statements; it provides no similar protection against third-party cajoling, pleading, or threatening.  *Van Hook*, 488 F.3d at 421.  More importantly, the United States Supreme Court has not addressed the issue of third-party communications during interrogations.

The state appellate court's decision was neither contrary to nor an unreasonable application of federal law as decided by the Supreme Court.

## VI.  Conclusion

For the foregoing reasons, it is recommended that Irizarry's Petition be denied.


s/ Greg White
United States Magistrate Judge


Date:  December 5, 2012


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**